# United States Court of Appeals for the Federal Circuit

2008-3079

JOHN M. KILLEEN,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Michael L. Spekter, of Washington, DC, argued for petitioner.

Tara K. Hogan, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were Jeanne E. Davidson, Director and Todd M. Hughes, Deputy Director. Of counsel was Hillary A. Stern, Senior Trial Counsel.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2008-3079

JOHN M. KILLEEN,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT

Respondent.

Petition for review of the Merit Systems Protection Board in CH0831070013-I-1.

_____

DECIDED: February 27, 2009

_____

Before RADER, PLAGER, and GAJARSA, <u>Circuit Judges</u>.

RADER, <u>Circuit Judge</u>.

Mr. Killeen is a retired air traffic controller entitled to annuity retirement benefits under the Civil Service Retirement System. In its final decision, the Merit Systems Protection Board ("the Board") sustained the Office of Personnel Management's ("OPM's") reconsideration decision to award Mr. Killeen a basic retirement annuity of $28,850.41. <u>Killeen v. Office of Pers. Mgmt.</u>, 106 M.S.P.R. 666, 667-68 (2007) ("<u>Final Decision</u>"). Because the Board did not account for Mr. Killeen's total service in computing the proration factor applied to the post-April 6, 1986, portion of Mr. Killeen's annuity, this court vacates the Board's decision and remands with instructions below.

Mr. Killeen served as an air traffic controller from September 6, 1981, until his retirement in September 8, 2001. During this twenty-year span, Mr. Killeen worked in both a full-time and part-time capacity. From the beginning of his service until March 30, 1997, Mr. Killeen worked full-time, logging eighty hours of work per eighty-hour pay period. Mr. Killeen then reduced his schedule to forty-eight hours of work per eighty-hour pay period.

Upon retirement, Mr. Killeen became eligible for annuity benefits under 5 U.S.C. § 8336(e):

> An employee who is voluntarily or involuntarily separated from the service, except by removal for cause on charges of misconduct or delinquency, after completing 25 years of service as an air traffic controller or after becoming 50 years of age and completing 20 years of service as an air traffic controller, is entitled to an annuity.

5 U.S.C. § 8336(e) (2006). Under this provision, air traffic controllers with at least twenty years of service may receive full benefits upon retirement at age fifty. This provision also guarantees retirees a minimum annuity of 50 percent of their "average pay" during the service period. 5 U.S.C. § 8339(e) ("The annuity of an employee retiring under section 8336(e) of this title is computed under subsection (a) of this section. That annuity may not be less than 50 percent of the average pay of the employee . . . ."). Due to his retirement at the earliest eligibility, Mr. Killeen receives an annuity under that minimum annuity formula.

The determination of this annuity amount, in particular the calculation of Mr. Killeen's "average pay," is at the heart of a long running dispute between Mr. Killeen

and OPM. In 1986, Congress adopted a new method for calculating the average pay of an employee providing both full- and part-time service after April 6, 1986:

> In computing an annuity under this subchapter for an employee whose service includes service that was performed on a part-time basis-
>
>> (A) the average pay of the employee, to the extent that it includes pay for service performed in any position on a part-time basis, shall be determined by using the annual rate of basic pay that <u>would be payable</u> for full-time service in the position; and
>>
>> (B) the benefit so computed shall then be multiplied by a fraction equal to the ratio which the employee's actual service, as determined by prorating an employee's <u>total service</u> to reflect the service that was performed on a part-time basis, bears to the <u>total service</u> that would be creditable for the employee if all of the service had been performed on a full-time basis.

5 U.S.C. § 8339(p)(1) (2002) (emphases added).

Under this formula, OPM should have calculated the portion of Mr. Killeen's annuity accounting for his post-April 6, 1986, service using the highest annual pay rate he <u>would have received</u> if he had worked full-time, and prorating that amount to account for his part-time employment. OPM, however, calculated Mr. Killeen's post-enactment annuity portion using the highest three years of pay that Mr. Killeen <u>actually received</u>. <u>Killeen v. Office of Pers. Mgmt.</u>, 382 F.3d 1316, 1318 (Fed. Cir. 2004). The Board then adopted this erroneous calculation. <u>Killeen v. Office of Pers. Mgmt.</u>, No. CH–0831–02–0608–I–1, 2003 WL 22248819 (M.S.P.B Sept. 23, 2003).

Relying on the language of § 8339(p)(1), this court reversed its earlier consideration of this question. <u>Killeen</u>, 382 F.3d at 1317. In its opinion, this court explained,

> Subsection (p) unambiguously modifies the definition of "average pay" when "computing" annuities under subchapter III of chapter 83 of Title 5—a subchapter that includes the annuity calculations in section 8339(e)—if

the work history of a retiring employee includes a period of part-time service. Instead of considering only pay received, subsection (p)—without exception—requires OPM to calculate the annuities using the annual rate that <u>would have been payable</u> had that employee been employed in full-time service.

<u>Id.</u> at 1322 (emphasis added). Accordingly, the court struck down the OPM regulation at 5 C.F.R. § 831.703(f)(2), stating that the definition of "average pay" in § 8339(p) did not apply to annuities calculated under the minimum annuity provision of § 8336(e), and remanded the dispute to the Board for recalculation of Mr. Killeen's annuity. <u>Id.</u> at 1324.

On remand, the Board ordered OPM to recalculate Mr. Killeen's annuity. <u>Killeen v. Office of Pers. Mgmt.</u>, No. CH-0831-02-0608-M-1 (M.S.P.B. July 13, 2005) ("<u>Remand Order</u>"). OPM then calculated Mr. Killeen's annuity using the steps outlined in 5 C.F.R. § 831.703(a)-(e). Letter and Enclosures from Tanya Battle, Legal Admin. Specialist, OPM, to John M. Killeen, Aug. 12, 2005 ("<u>OPM Aug. 12, 2005, Decision</u>"). That regulation requires calculation of two separate average pays—one for the period of service before April 7, 1986, and another for April 7, 1986, onward:

> (c) Pre-April 7, 1986, basic annuity. The partial annuity for pre-April 7, 1986, service is computed in accordance with 5 U.S.C. 8339 using the pre-April 7, 1986, average pay and length of service (increased by the unused sick leave credit at time of retirement) prior to April 7, 1986.
>
> (d) Post-April 6, 1986, basic annuity. The partial annuity for post-April 6, 1986, service is computed in accordance with 5 U.S.C. 8339 using the post-April 6, 1986, average pay and length of service after April 6, 1986. This amount is then multiplied by the proration factor.

5 C.F.R. § 831.703(c)-(d) (1987). The pre-April 7, 1986, average pay is "the largest annual rate resulting from averaging, over any period of 3 consecutive years of creditable service, an employee's actual rates of basic pay during that period, with each rate weighted by the time it was in effect." 5 C.F.R. § 831.703(b). Mr. Killeen's post-

April 7, 1986, average pay, in contrast, is "the largest annual rate resulting from averaging, over any period of 3 consecutive years of creditable service, the annual rate of basic pay that would be payable for full-time service by an employee during that period, with each rate weighted by the time it was in effect." Id.

Applying this methodology, OPM calculated Mr. Killeen's annuity with a base of $50,840 for the period before April 7, 1986, and a base of $67,887 for his work after that date. OPM Aug. 12, 2005, Decision, ATC Minimum Annuity Worksheet. To determine his pre-April 7, 1986, annuity, OPM simply multiplied the average of Mr. Killeen's three highest rates of pay actually received—$50,840—by a fraction representing the portion of Mr. Killeen's overall service prior to April 7, 1986, in relation to this total service, and then multiplied that result by 50 percent. Id.

To determine the post-April 6, 1986 portion of Mr. Killeen's annuity, OPM multiplied the average of the three highest rates of pay he would have received for full-time service—$67,887—by a fraction representing the portion of Mr. Killeen's overall service on and after April 7, 1986, in relation to this total service. Id. OPM then multiplied that number by a "proration factor" of 88 percent determined by the ratio of hours Mr. Killeen actually worked after April 6, 1986, to the hours he could have worked had he maintained full-time status. Id. Finally, that number was multiplied by 50 percent. Id. OPM then totaled the two annuity numbers to arrive at Mr. Killeen's total annuity amount: $28,850.41 per year. Id.

Mr. Killeen disagreed with OPM's calculation and filed a petition for enforcement with the Board to force OPM to comply with the Board's order to recalculate his annuity in accordance with this court's Killeen decision. Killeen v. Office of Pers. Mgmt., No.

CH-0831-02-0608-C-1 (M.S.P.B. Dec. 29, 2005) ("Recommendation"). The administrative judge in that action overturned OPM and recommended that Mr. Killeen be paid at the annuity rate of $30,803. Id. at 1. The administrative judge determined that $67,699—Mr. Killeen's average pay under the new, post-April 6, 1986 methodology—should be used as his average pay for all periods of service, including those prior to April 7, 1986. The administrative judge predicated this decision on a finding that § 15204(c) of Pub. L. No. 99-272, which states that 5 U.S.C. § 8339(p) is only applied to service performed on or after 1986, was inapplicable because that provision applied only when the annuitant performed part-time service before April 7, 1986, as well as on or after that date. Id. at 3. The administrative judge also used all of Mr. Killeen's service performed throughout his entire career to determine a proration factor of 91 percent to account for his part-time service. Id.

In July 2006, the Board reversed and vacated the Recommendation. Killeen v. Office of Pers. Mgmt., 102 M.S.P.R. 627, 631 (2006) ("Enforcement Decision"). The Board based its decision on the fact that the only issue before the administrative judge was calculation of the post-April 6, 1986, annuity that OPM had correctly performed. Id. The Board further held that any additional issues related to the computation of Mr. Killeen's annuity were premature, pending OPM's reconsideration decision. Id.

OPM issued its reconsideration decision in September 2006, upholding the OPM Aug. 12, 2005, Decision. Letter and Enclosures from R. A. Kier, Legal Admin. Specialist, OPM, to John M. Killeen (Sept. 10, 2006) ("OPM Reconsideration Decision"). In January 2007, the Board's administrative judge reversed the OPM Reconsideration Decision, found that Mr. Killeen was entitled to his average pay under § 8339(p) for all

years of service, and used all of Mr. Killeen's service performed throughout his entire career to determine the proration factor for his part-time service. Killeen v. Office of Pers. Mgmt., No. CH–0831–07–0013–I–1, slip op. at 5-6 (M.S.P.B. Jan. 16, 2007) (Initial Decision). As in his earlier Recommendation, the administrative judge computed Mr. Killeen's annuity at $30,850.41 and used a proration factor of 91 percent.

In its Final Decision, the Board reinstated the OPM Reconsideration Decision, which upheld the OPM Aug. 12, 2005, Decision awarding Mr. Killeen an annuity of $29,850.41. Notably, the Board premised its decision on the doctrine of collateral estoppel. Final Decision, 106 M.S.P.R. at 672. In particular, the Board held that the only error identified by this court in Killeen was OPM's failure to apply § 8339(p) to the annuity computation for Mr. Killeen's post-April 6, 1986, service. Id. at 671. The Board determined that Mr. Killeen had "actually litigated" the issue of the proper computation of his annuity in the enforcement proceeding, and that he had a full and fair opportunity to litigate the issue. Id. at 670-71. The Board also "discern[ed] no error in the calculations set forth in OPM's reconsideration decision, which mirror the calculations set forth in OPM's initial decision." Id. at 672. Mr. Killeen timely petitioned this court for review.

II

This court's review of the Board's decisions is defined by statute. This court will affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c)(i)-(3) (2006); Cheeseman v. Office of Pers. Mgmt., 791

F.2d 138, 141 (Fed. Cir. 1986). However, this court reviews the Board's statutory interpretations without deference. Weatherby v. Dep't of Interior, 466 F.3d 1379, 1383 (Fed. Cir. 2006).

Mr. Killeen asserts that the Board erred in finding him estopped from challenging OPM's annuity calculation. He further asserts that the Board erred in upholding OPM's reliance on two annuity calculations, one for pre-April 7, 1986 service, and one for post-April 6, 1986, service, in computing his total annuity. Mr. Killeen also claims the Board erred by including only post-April 6, 1986, service in the proration factor applied to the post-April 6, 1986, annuity amount.

A.

Before proceeding to the merits of Mr. Killeen's petition, this court must address the Board's primary holding under the doctrine of collateral estoppel. Collateral estoppel, or issue preclusion, bars litigation of an issue if the identical issue was actually litigated and necessarily decided in a prior case where the interests of the party to be precluded were fully represented. Thomas v. Gen. Servs. Admin., 794 F.2d 661, 664 (Fed. Cir. 1986); see Mother's Rest., Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1569 (Fed. Cir. 1983) (holding collateral estoppel may foreclose relitigation of issues that were "actually litigated" and determined in a prior law suit.).

In its Enforcement Decision, the Board expressly declined to rule on the propriety of OPM's use of two different calculations for pre-April 7, 1986, and post-April 6, 1986, service. Enforcement Decision, 102 M.S.P.R. at 630. The Board reasoned that it "lack[ed] jurisdiction over a retirement issue until OPM issues a reconsideration decision." Id. at 630-31.

A dismissal for lack of jurisdiction, however, does not constitute final judgment on the merits. See Media Techs. Licensing, LLC v. Upper Deck Co., 334 F.3d 1366, 1369-70 (Fed. Cir. 2003) (holding that res judicata does not apply to dismissals based on lack of standing: "Because standing is jurisdictional, lack of standing precludes a ruling on the merits."); see also Schafer v. Dep't of Interior, 88 F.3d 981, 990 (Fed. Cir. 1996) ("This is a decision on the merits which, unlike dismissal for want of jurisdiction, has a res judicata effect."). Because it declined to reach the merits, the Board cannot maintain that Mr. Killeen's complaint about the computational methodology employed by OPM was "actually litigated" or "necessarily decided." Indeed, OPM acknowledged as much in its brief, stating "Collateral Estoppel Did Not Bar The Board's Consideration Of Mr. Killeen's Argument." Resp. Br. at 16. Accordingly, this court reverses the Board's finding that Mr. Killeen's challenge was barred by collateral estoppel.

B.

Despite estopping Mr. Killeen from challenging OPM's methodology, the Board briefly addressed the merits, stating that it "discern[ed] no error in the calculations set forth in OPM's reconsideration decision, which mirror the calculations set forth in OPM's initial decision." Final Decision, 106 M.S.P.R. at 672. Accordingly, this court also proceeds to evaluate the merits of Mr. Killeen's annuity calculations.

Mr. Killeen contends that the Board erred in permitting OPM to compute two annuity amounts to account for his pre-April 7, 1986, and post-April 6, 1986, service. He argues that OPM should instead have calculated just one annuity value, applying the post-April 6, 1986, annuity formula. The statute, however, does not permit this result, particularly when all of Mr. Killeen's part-time service occurred after April 6, 1986.

Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, § 15204(a), 100 Stat. 335 (Apr. 7, 1986) (codified at 5 U.S.C. § 8339(p)(1) (2006)). By its terms, that title precludes application of § 8339(p)(1) to service performed before April 7, 1986: "The amendments made by this section shall be effective with respect to service performed <u>on or after</u> the date of the enactment of this Act." Pub. L. No. 99-272, § 15204(c) (emphasis added). Accordingly, the statute required OPM to calculate two annuity amounts to account for Mr. Killeen's pre-enactment and post-enactment employment periods. Moreover, because it did not alter the method for computing pre-April 7, 1986, annuity amounts, § 15204(c) de facto left in place the pre-April 7, 1986, system for calculating annuities for pre-enactment service. Thus, OPM appropriately relied on the annuity computation methodology set forth in 5 U.S.C. § 8331(4) in setting Mr. Killeen's pre-April 7, 1986, annuity amount at $5825.41.

In addition to challenging the multiple annuity calculations for pre- and post-enactment service, Mr. Killeen also asserts that OPM erred in its application of § 8339(p)(1) to determine his post-April 6, 1986, annuity amount. In particular, he contends that OPM impermissibly narrowed the meaning of the term "total service" to include only his post-April 6, 1986, service in the calculation of the proration factor under § 8339(p)(1)(B). The statute indeed supports Mr. Killeen's claim on this point.

Computation of an annuity for post-April 6, 1986, service that includes part-time service is a two-step process under § 8339(p)(1). The first step requires determination of the employee's "average pay." § 8339(p)(1)(A). As explained above, that "average pay" is the average of the three highest annual rates of basic pay that the employee <u>would have earned</u> had he worked full-time rather than part-time during a given year.

Id. The second step requires computation of a proration factor by which the average pay from step one is discounted to account for the portion of the employee's total career spent working part-time. § 8339(p)(1)(B) (emphasis added). Section 8339(p)(1)(B) explicitly provides that the proration factor is:

> a fraction equal to the ratio which the employee's actual service, as determined by prorating an employee's total service to reflect the service that was performed on a part-time basis, bears to the total service that would be creditable for the employee if all of the service had been performed on a full-time basis.

Id. (emphases added). Stated differently, the statute specifies that the proration factor is the employee's actual "total service" divided by the "total service" that he could have worked had he maintained full-time status throughout his entire career.

Nevertheless, OPM followed the narrower definition of "proration factor" set forth in its regulations and urged this court to accord that method Chevron deference. To the contrary, under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), this court applies a "two-part inquiry in cases in which a court reviews an agency's construction of a statute that it administers." Stearn v. Dep't of Navy, 280 F.3d 1376, 1382 (Fed. Cir. 2002). The first, threshold inquiry is "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842–43. If the intent of Congress is not clear, the court must assess "whether the agency's answer is based on a permissible construction of the statute." Id. at 843.

The statutory analysis, of course, turns on the "language of the statute." Killeen, 382 F.3d at 1321. In this case, the statute is abundantly clear: the proration factor must

account for an employee's "total service." Neither this court, nor OPM, can ignore the word "total" in the statute. If the law included only service rendered after April 6, 1986, then the statutory language would have simply used the word "service" alone. However, by including the term "total," the law directs that the proration factor account for an employee's lifetime service, not merely service rendered after April 6, 1986.

This inclusive understanding of the phrase "total service" gives full effect to § 8339(p)(1). This court explained earlier: "With subsection (p), Congress attempted to eliminate the statutory windfall to part-time employees by creating parity in the average pay calculation for full- and part-time employees and adjusting for part-time service later at the annuity-calculation stage." Killeen, 382 F.3d at 1322. Giving effect to the word "total" in the phrase "total service" achieves this end. The use of an employee's total service means that § 8339(p)(1)(B) closes the loophole while still ensuring that retirees are credited for the full term of their service to the government. Indeed, a proration factor based on total service is the most accurate reflection of an employee's service provided to OPM.

Accordingly, because the statute calls for "total service" in § 8339(p)(1)(B), this court reverses the Board's final decision and instructs that a proration factor of 91 percent be applied in calculating the post-April 6, 1986, portion of Mr. Killeen's annuity. As explained in the Board's Initial Decision, this 91 percent proration factor reflects "all of the hours [Mr. Killeen] worked from 1981 until he retired in 2001." Initial Decision, No. CH–0831–07–0013–I–1, slip op. at 5-6.

Ordinarily, this court would remand for the Board to have OPM recalculate the appropriate annuity. This matter, however, has been extensively litigated, the facts are

fully established, and it has now been before this court twice. In the interest of justice, this court shall resolve the matter, subject only to a motion for panel rehearing on the ground that there is an error in our calculations.

The court first uses the pre-April 7, 1986, average pay amount of $50,840, multiplied by a fraction representing the portion of Mr. Killeen's overall service prior to April 7, 1986 in relation to his total service (i.e., September 6, 1981, to April 6, 1986, divided by September 6, 1981, to September 8, 2001), and multiplied by 50 percent. It then uses the post-April 6, 1986, average pay amount of $67,887, multiplied by a fraction representing the portion of Mr. Killeen's overall service after April 6, 1986, in relation to his total service (i.e., April 7, 1986, to September 8, 2001, divided by September 6, 1981, to September 8, 2001), multiplied by 50 percent, and then multiplied by a proration factor of 91 percent for total service as determined by this court. Mr. Killeen is, thus, entitled to an annuity rate of $29,635.36.

The decision of the Board is therefore

<u>VACATED AND REMANDED WITH INSTRUCTIONS</u>.

COSTS

Each party shall bear its own costs.