**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

ERIC ROSE,

Appellant,

v.

DEPARTMENT OF DEFENSE,

Agency.

DOCKET NUMBER
AT-0752-12-0063-B-1

DATE: September 17, 2014

# THIS ORDER IS NONPRECEDENTIAL[1]

Neil C. Bonney, Esquire, Virginia Beach, Virginia, for the appellant.

Stacey Turner Stokes, Esquire, Fort Lee, Virginia, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**REMAND ORDER**

The appellant has filed a petition for review of the remand initial decision, which sustained his removal for absence without leave (AWOL). For the reasons discussed below, we GRANT the appellant's petition for review and REMAND

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the case to the regional office for further adjudication in accordance with this Order.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2 The appellant was a WG-04 Store Worker for the Defense Commissary Agency, a component of the Department of Defense. Initial Appeal File (IAF), Tab 6, Subtab 4A. The appellant's duty station was the Gulfport Naval Construction Battalion Center (NCBC), a Department of the Navy (Navy) installation of which the Defense Commissary Agency is a tenant. *Id.* On June 10, 2011, Naval Military Police issued the appellant criminal tickets for carrying a concealed weapon (a fixed blade knife) and making a disturbance in a public place. Remand Appeal File (RAF), Tab 11 at 97, 108-09. Effective the same day, the Navy barred the appellant from entering the NCBC under threat of fine and imprisonment. IAF, Tab 6, Subtab 4J. The reasons for the barment were (1) carrying a concealed weapon, and (2) threats of violence against persons inside the commissary. *Id.*

¶3 Because he was unable to enter the NCBC, the appellant was unable to report for duty. The agency began carrying him in AWOL status. IAF, Tab 6, Subtab 4L. The appellant filed a constructive suspension appeal, *Rose v. Department of Defense*, MSPB Docket No. AT-0752-11-0814-I-1, IAF, Tab 1, and the administrative judge reversed the action, finding that the agency had constructively suspended the appellant, *id.*, Tab 18.

¶4 During the pendency of that appeal, on October 21, 2011, the agency removed the appellant based on two charges: (1) "Absence from Duty Occasioned by your being Barred from entering the Gulfport Naval Construction Battalion Center," and (2) "Absent without Leave." IAF, Tab 6, Subtabs 4A, 4D, 4H. The appellant filed the instant appeal, IAF, Tab 1, and the administrative judge reversed the removal, IAF, Tab 10, Initial Decision (ID) at 2, 7. He merged the charges and found, based on the same reasoning that he employed in the

constructive suspension appeal, that the agency failed to show that it properly carried the appellant in AWOL status during the charged dates. ID at 2, 4-7. The agency filed petitions for review in both cases.

¶5        The Board reversed the initial decision in the constructive suspension appeal and dismissed it for lack of jurisdiction. *Rose v. Department of Defense*, 118 M.S.P.R. 302 (2012). It found that the appellant did not meet the standard established in *Hollingsworth v. Defense Commissary Agency*, 82 M.S.P.R. 444 (1999), for determining whether an employee being barred by one governmental entity from being able to report for duty to another governmental entity has been constructively suspended. *Rose*, 118 M.S.P.R. 302, ¶¶ 4, 10-14. In the instant removal appeal, the Board vacated the initial decision and remanded for further adjudication. IAF, Tab 12, Remand Order at 2, 5. The Board found that the initial decision could not stand to the extent that it was based on the same faulty analysis that the administrative judge employed in the constructive suspension appeal. Remand Order at 4. However, the Board found that it could not issue a final decision on review because the appellant had withdrawn his affirmative defense of retaliation for protected activity and waived his right to a hearing conditioned on a finding reversing the removal action. Remand Order at 4-5. It therefore remanded the appeal to give the appellant an opportunity to request a hearing and pursue his affirmative defense. Remand Order at 5.

¶6        On remand, the appeal was assigned to a different administrative judge, who conducted a hearing and sustained the removal. RAF, Tab 29, Remand Initial Decision (RID) at 2, 9. He found that the agency proved its charge of AWOL, the appellant received due process, the appellant did not prove his retaliation defense, and the action promoted the efficiency of the service. RID at 2-9. The appellant has filed a petition for review, Remand Petition for Review (RPFR) File, Tab 1, and the agency has filed a response, RPFR File, Tab 3.

<u>The agency established a nexus between the charge and the efficiency of the service.</u>

¶7        On review, the appellant argues that it does not promote the efficiency of the service to remove an employee who has done nothing wrong. RPFR File, Tab 1 at 13-16. He does not dispute that he was AWOL, but he argues that the barment underlying his AWOL was faulty. *Id*.

¶8        The details of the events leading up to the appellant's arrest and barment are as follows. On June 7, 2011, the appellant complained to a coworker that his immediate supervisor intended to "write him up" for arriving at work early and working through lunch. He told the coworker that if the agency management did not handle it appropriately, he would take matters into his own hands and "heads are going to roll." Hearing Transcript (HT) at 244-45 (testimony of the appellant). Two days later, on June 9, 2011, the coworker met in person with the Store Director, the appellant's third-line supervisor, and registered several complaints about the appellant, including that the appellant had made this "heads are going to roll" comment. *Id*. at 97-101 (testimony of the Store Director). The coworker stated that he was concerned by this "threat" because the appellant owned a gun.[2] *Id*. at 99 (testimony of the Store Director). The Store Director relayed this information by email to the Zone Manager, the appellant's fourth-level supervisor. RAF, Tab 11 at 32. However, the Store Director recharacterized the appellant's "heads are going to roll" comment as follows:

> The supposed comments were that [the appellant] was getting fed up with this place, that management head's [sic] were going to roll, and if [the agency] did not fix it he has a gun and can take care of it himself.

---

[2] There appears to be some dispute about whether the appellant had ready access to a firearm at this time. HT at 245-46, 293-95 (testimony of the appellant). It is undisputed, however, that the appellant never mentioned any firearm in connection with his "heads are going to roll" comment; this was merely additional information volunteered to the Store Director by the appellant's coworker. *Id*. at 99 (testimony of the Store Director), 245, 281 (testimony of the appellant); RAF, Tab 11 at 101.

*Id*. The following day, June 10, 2011, the Zone Manager telephoned the Store Director and told him to report the matter to base security. HT at 115 (testimony of the Store Director). The Store Director did so, and gave base security substantially the same account that he had given the Zone Manager. *Id*. at 115-16 (testimony of the Store Director).

¶9    Later that morning, while the appellant was working behind the store, he was approached by several police officers with weapons drawn. They asked him whether he had any concealed weapons. HT at 250 (testimony of the appellant). The appellant indicated that he had two knives—one clipped to the outside of his pants pocket, and one on a lanyard around his neck. *Id*. The officers also took a statement from the appellant's coworker who made the original complaint about the appellant's alleged threat. RAF, Tab 11 at 101. The officers then issued the appellant two tickets—one for carrying a concealed deadly weapon and one for causing a disturbance in a public place. *Id*. at 108-09. That afternoon, the police officers compiled information about the incident and presented it to the acting commander of the Gulfport NCBC. HT at 195-96 (testimony of the acting base commander). RAF, Tab 11 at 97. The acting commander reviewed the information and issued an order barring the appellant from entering Gulfport NCBC upon threat of fine and imprisonment. HT at 196 (testimony of the acting base commander); IAF, Tab 6, Subtab 4J. The appellant then was escorted off base. RAF, Tab 11 at 97.

¶10    Eventually, on October 18, 2011, the Assistant United States Attorney decided not to prosecute the appellant and instead moved to dismiss the charges. IAF, Tab 8, Subtab 6. The appellant's attorney forwarded this information to the Gulfport NCBC commanding officer. *Id*. The same acting commander who issued the initial barment order considered the information but found it insufficient to prove that the charges underlying the barment were, in fact, dismissed. He therefore declined to modify or rescind the order. HT at 201-09 (testimony of the acting base commander). On October 21, 2011, before the

appellant's attorney could get a copy of the court order dismissing the charges, the agency removed the appellant.[3]  IAF, Tab 6, Subtabs 4A, 4D.

¶11      The record shows that, during the barment period, the commanding officer asked the Store Director whether he had any comments regarding the barment. HT at 119 (testimony of the Store Director).  The Store Director declined to comment, informing the commanding officer that he did not want to influence his decision.  *Id*.  However, when the commanding officer asked the Store Director whether any store employees were in fear of the appellant, the Store Director replied in the affirmative.  *Id*.  The record also shows that the appellant needed a knife for opening hundreds of boxes every day—a major part of his job.  HT at 253-54 (testimony of the appellant).  The record further shows that the commissary at which the appellant worked offers similar knives for sale.  *Id*. at 256-57 (testimony of the appellant);  RAF, Tab 18 at 60.

¶12      The appellant has presented a substantial case that the barment order underlying the AWOL charge was problematic.  The appellant never threatened anyone.  He merely stated that "heads are going to roll."  Although this statement might be indelicate, we find that it is a hyperbolic idiom that no reasonable person would construe as an actual threat.  *See Metz v. Department of the Treasury*, 780 F.2d 1001, 1002-03 (Fed. Cir. 1986) (to determine whether words constituted a threat, the Board must use "the connotation which a reasonable person would give to the words") (quoting *Meehan v. U.S. Postal Service*, 718 F.2d 1069, 1075 (Fed. Cir. 1983)).  Nor did the appellant mention a gun in connection with his statement.  The Store Director added this embellishment in his report to base security.  When the appellant was eventually barred, it was on the basis that he engaged in this hyperbole and was carrying a tool that he used for his job and that was available for purchase at Gulfport NCBC.  Finally, the criminal charges against the appellant were dismissed but not in time to offer

---

[3] The record indicates that it would have taken "a few weeks" to obtain a copy of the court's order.  IAF, Tab 8, Subtab 6 at 6.

sufficient proof of the matter to the Navy, so that the barment might be modified or lifted.

¶13        Nevertheless, the appellant was not removed for the conduct underlying the barment. He was removed for AWOL arising out of the barment. IAF, Tab 6, Subtabs 4A, 4D, 4H. We agree with the administrative judge that an order barring an individual from a military installation is committed to the sound discretion of the military base commander, and that the Board lacks the authority to review such an order. RID at 8; *see Department of Navy v. Egan*, 484 U.S. 518, 529-330 (1988) (unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the executive in military and national security affairs); *United States v. Albertini*, 472 U.S. 675, 690 (1985) (a commanding officer has broad authority to issue a barment letter, as long as the letter is not patently arbitrary or discriminatory); *Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy*, 367 U.S. 886, 893-96 (1961) (commanding officers traditionally have exercised unfettered discretion in excluding civilians from their area of control). The Board implicitly recognized this in *Hollingsworth*, 82 M.S.P.R. 444, ¶ 7, when it found that an analysis of a constructive suspension based on such a barment must focus on the actions and obligations of the employing agency—not on the actions of the military department or the propriety of the barment itself.

¶14        To show that an adverse action is taken for the efficiency of the service, an agency must establish a nexus between the proven charge and the efficiency of the service. *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 18 (2013). It is well-established that a proven charge of AWOL satisfies that requirement. *Bryant v. National Science Foundation*, 105 F.3d 1414, 1417 (Fed. Cir. 1997) (the nexus between the charged offense and the efficiency of the service is automatic when the charged offense is AWOL). The agency was not required to establish a nexus between the efficiency of the service and the conduct giving rise to the barment but which was not part of the charge.

<u>The administrative judge correctly applied *Hollingsworth* to the facts of this case.</u>

¶15    The appellant argues that the administrative judge should not have used the four-part test set forth in *Hollingsworth*, 82 M.S.P.R. 444, for analyzing whether the agency initiated his absence and in any event, the administrative judge applied *Hollingsworth* incorrectly.  RPFR File, Tab 1 at 24-27.

¶16    As to the applicability of *Hollingsworth* to the instant appeal, we agree with the appellant that the Board's jurisdiction is not in question and that *Hollingsworth* is not on point to the extent that it pertains to the Board's jurisdiction over a constructive suspension appeal.  RPFR File, Tab 1 at 24-25. However, *Hollingsworth* is instructive on the issue of whether the agency properly carried the appellant in an AWOL status.  82 M.S.P.R. 444, ¶ 7; *see Boscoe v. Department of Agriculture*, 54 M.S.P.R. 315, 325 (1992) (to prove an AWOL charge, an agency must show that the employee was absent from duty, and either that his absence was not authorized or that his request for leave was properly denied).  In any event, the appellant has not advanced an alternative analytical framework, and he also has conceded the AWOL charge.  RPFR File, Tab 1 at 14; RAF, Tab 24 at 4.

¶17    As to the analysis of the *Hollingsworth* factors, we disagree with the appellant that the Board's penalty jurisprudence amounts to an "agency policy, rule, regulation, contractual provision, or other authority to offer assistance to the employee with the circumstances beyond his control," thus meeting the third part of the test.  82 M.S.P.R. 444, ¶ 7; RPFR File, Tab 1 at 24-25.  If the Board's penalty jurisprudence, which applies equally to all respondent agencies, were sufficient to satisfy this factor, then this factor would be satisfied in every case, and there would have been no need for the Board to list it as an element of a constructive suspension under these circumstances.  Moreover, the Board already decided in the appellant's related constructive suspension appeal, *Rose*, 118 M.S.P.R. 302, ¶¶ 9-13, that he did not satisfy the *Hollingsworth* factors, and we find that the appellant is collaterally estopped from relitigating the issue in the

instant appeal. *See Killeen v. Office of Personnel Management*, 558 F.3d 1318, 1323 (Fed. Cir. 2009) (collateral estoppel bars litigation of an issue if the identical issue was actually litigated and necessarily decided in a prior case where the interests of the party to be precluded were fully represented). In any event, as noted above, *supra* ¶ 16, the appellant has conceded the AWOL charge.

The appellant did not prove his affirmative defense of retaliation for protected activity.

¶18        The appellant challenges the administrative judge's analysis of his affirmative defense of retaliation for protected activity under 5 U.S.C. § 2302(b)(9). RPFR File, Tab 1 at 27-30; RID at 6-7. As relevant here, that section prohibits any employee who has the authority to take, direct others to take, recommend, or approve any personnel action, to take any personnel action against any employee because of the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation. 5 U.S.C. § 2302(b)(9)(A). Because the record on this issue is complete, we proceed to the ultimate question of whether the appellant has met his overall burden of proving illegal retaliation. *See Marshall v. Department of Veterans Affairs*, 111 M.S.P.R. 5, ¶ 16 (2008).

¶19        The appellant filed a host of complaints over the years, including complaints to the Office of Special Counsel, RAF, Tab 18, 254-65, the Occupational Safety & Health Administration, *id*. at 278-81, the Inspector General, *id*. at 285-86, and the Defense Commissary Agency Hotline, *id*. at 289-90, as well as equal employment opportunity (EEO) complaints, *id*. at 97-100, 242. Without deciding whether all of these activities are covered under 5 U.S.C. § 2302(b)(9)(A), we find that at least some of them are—in particular, the EEO complaints. *See Smith v. Department of Agriculture*, 64 M.S.P.R. 46, 62-63 (1994) (filing an EEO complaint is protected activity under 5 U.S.C. § 2302(b)(9)). In addition, the proposing official, the deciding official, and the Store Director were all aware of at least some of the appellant's complaints. RPFR File, Tab 1 at 28; RAF, Tab 18 at 97-100, 242; HT at 38 (testimony of the

proposing official), 72-76 (testimony of the deciding official), 96 (testimony of the Store Director).

¶20    For the following reasons, however, we agree with the administrative judge that the appellant has not established a nexus between his protected activity and his removal, the personnel action at issue in this appeal.  RID at 7.  In deciding this issue, the Board will weigh the seriousness of the proven charge against the relevant officials' motive to retaliate.  *Crawford-Graham v. Department of Veterans Affairs*, 99 M.S.P.R. 389, ¶ 26 (2005).  In this regard, we find that agency management in general had a motive to retaliate against the appellant. The appellant had a reputation for filing complaints, and managers sometimes discussed this fact among themselves, at least in the context of trying to resolve the complaints.  HT at 76 (testimony of the deciding official).  There is no evidence that the deciding official was the subject of any of the appellant's complaints, so his motive to retaliate would be relatively small, arising only from the administrative burden that the complaints placed on him and the poor reflection that they might have on the operations under his control.  The proposing official, however, had a strong motive to retaliate because she was the subject of a pending EEO complaint by the appellant at the time she proposed his removal.  RAF, Tab 18 at 97-100; HT at 10-11 (testimony of the proposing official).

¶21    Nevertheless, the proven charge was very serious.  The appellant had been AWOL for nearly 3 months when his removal was proposed, with no reliable indication that he would ever be able to return to duty.  IAF, Tab 6, Subtab 4H. His continued absence caused an additional burden to his coworkers, who had to work extra hours in order to make up for the time that the appellant was missing. HT at 18-19 (testimony of the proposing official).  Under those circumstances, we find it more likely than not that the proposing official would have taken action against the appellant even if she had no retaliatory motive.  Furthermore, as noted above, the proposing official waited a significant period of time after the

appellant's barment to propose his removal. This does not lend itself to a finding that she seized the barment as an opportunity to avenge herself or to rid herself of a troublesome employee. Rather, it suggests that she waited, despite the attendant disruption in the workplace, to see if the appellant would be able to return to work before she determined to propose his removal. As for the deciding official, considering his lesser motive to retaliate in conjunction with the circumstances discussed above, we find that his removal decision was probably not an act of retaliation.

¶22    As for the Store Director, his role in the removal was only indirect. There is no evidence that he had any discussions with or otherwise influenced the proposing or deciding officials in this matter. However, his original, inaccurate report to base security set all of these events in motion, and he later declined to take the opportunity that the base commander presented him to influence the Navy to allow the appellant to return to work. *Supra*, ¶ 11. Furthermore, the agency failed to advance any nonretaliatory explanation for why the Store Director reported inaccurate information to base security. The appellant thus argues that his removal was a product of the "seeds planted" by the Store Director. RPFR File, Tab 1 at 29-30. This appears to be a cat's paw theory of the case—a theory under which the retaliatory motive of the Store Director influenced the appellant's removal even though the Store Director did not personally implement the removal. *See Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 19 (2014).

¶23    We find, however, that there is an insufficient connection between the Store Director's actions and the barment to impute a retaliatory motive to the removal. Specifically, we agree with the administrative judge that the Navy's independent investigation of the matter is key. RID at 7. The U.S. Supreme Court has explained that a supervisor's biased report of alleged misconduct will be a proximate cause "if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's

recommendation, entirely justified." *Staub v. Proctor Hospital*, [131 S. Ct. 1186](#), 1193 (2011). In this case, it is likely that the Navy would never have conducted its investigation in the first place if it were not for the Store Detector's inaccurate report. However, there is no evidence that the Navy relied on the report itself in making its barment decision. The record shows instead that the Military Police gathered evidence independently, including the appellant's fixed blade knife and his coworker's statement that the appellant intended to "knock some heads off." RAF, Tab 11 at 97-114. Notably, the coworker specifically told the Military Police that the appellant did not say he had a weapon. *Id*. at 103. The statements of probable cause made no mention of the Store Director's report. RAF, Tab 18 at 35, 37. Nor did they make any mention of the erroneous information contained in that report, i.e., the appellant allegedly threatening to use a firearm. *Id*. As for the Store Director telling the base commander that agency employees feared the appellant, we find that the Store Director offered this information only when the base commander specifically requested it. HT at 119 (testimony of the Store Director). There is no evidence that this answer was untruthful or that it would have been any different had the Store Director not been the subject of EEO complaints filed by the appellant. For these reasons, we find that any retaliatory actions on the part of the Store Director were not a proximate cause of the barment or the subsequent removal.

<u>We lack the authority to review the appellant's claim that he was denied due process as to the barment order.</u>

¶24        The appellant argues that the agency denied him due process because he had no opportunity to respond to the charges that led to his AWOL, and the notice and opportunity to respond to the proposed removal were just empty formalities. RPFR File, Tab 1 at 17-24.

¶25        To the extent that the appellant is arguing that he was denied due process concerning the barment itself, for the reasons discussed above, the Board lacks the authority to review the barment order. *Supra*, ¶ 13. Due process with respect

to the agency's removal action does not require that the appellant have an opportunity to contest the barment order. *See Buelna v. Department of Homeland Securit*y, 121 M.S.P.R. 262, ¶¶ 23-24 (2014).

¶26        The Board has recently issued a line of cases explaining an employee's due process rights in the analogous context of security clearance and sensitive position eligibility cases. *Ryan v. Department of Homeland Security*, 2014 MSPB 64, ¶¶ 7-11; *Flores*, 121 M.S.P.R. 287, ¶ 12; *Buelna*, 121 M.S.P.R. 262, ¶¶ 27-28. Specifically, to the extent that there may exist viable alternatives to the proposed removal, i.e., alternatives that were not prohibited, impracticable, or outside management's purview, an employee has the right to invoke the discretion of a deciding official with the authority to select such alternatives. *Buelna*, 121 M.S.P.R. 262, ¶¶ 27-28. Because the Board announced this standard after the administrative judge issued his initial decision, the parties did not have a full and fair opportunity to develop the record in this regard, and we find that the current record is insufficient for the Board to make a determination at this time as to whether that standard has been met. We therefore remand this appeal for further adjudication on the due process issue.

**ORDER**

¶27    For the reasons discussed above, we REMAND this case to the regional office for further adjudication in accordance with this Remand Order. The administrative judge shall afford the parties an additional opportunity to address the due process issue in light of the *Buelna* line of cases.


FOR THE BOARD:                    _____
                                 William D. Spencer
                                 Clerk of the Board

Washington, D.C.