# United States Court of Appeals for the Federal Circuit

---

**JOHN C. PARKINSON,**
*Petitioner*

**v.**

**DEPARTMENT OF JUSTICE,**
*Respondent*

---

2015-3066

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-13-0032-I-2.

---

Decided: October 26, 2017

---

KATHLEEN M. MCCLELLAN, Whistleblower & Source Protection Program, ExposeFacts, Washington, DC, argued for petitioner. Also represented by JESSELYN ALICIA RADACK.

ELIZABETH MARIE HOSFORD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by TARA K. HOGAN, ROBERT E. KIRSCHMAN, JR., BENJAMIN C. MIZER.

DAVID COLAPINTO, Kohn, Kohn & Colapinto, LLP, Washington, DC, for amici curiae National Whistleblow-

ers Center, Michael German, Robert Kobus, Jane Turner, Frederic Whitehurst. Also represented by STEPHEN M. KOHN, National Whistleblowers Legal Defense, Washington, DC.

PETER ROMER-FRIEDMAN, Outten & Golden LLP, Washington, DC, for amici curiae Reserve Officers Association of America, Veterans of Foreign Wars of the United States, Military Order of the Purple Heart, Military Officers Association of America, Retired Enlisted Association. Also represented by THOMAS G. JARRARD, The Law Office of Thomas G. Jarrard, PLLC, Spokane, WA.

—————————————————

Before PROST, *Chief Judge*, NEWMAN, PLAGER, LOURIE, LINN, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, HUGHES, and STOLL, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* HUGHES, in which *Chief Judge* PROST and *Circuit Judges* NEWMAN, LOURIE, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, and STOLL join.

Dissenting opinion filed by *Circuit Judge* PLAGER, in which *Circuit Judge* LINN joins.

Dissenting opinion filed by *Circuit Judge* LINN, in which *Circuit Judge* PLAGER joins.

HUGHES, *Circuit Judge.*

Lt. Col. John C. Parkinson appeals from a final decision of the Merit Systems Protection Board sustaining his removal from the Federal Bureau of Investigation. A panel of this court reversed the Board's decision, concluding, in part, that the Board erred by not permitting Mr. Parkinson to raise whistleblower reprisal as an affirmative defense under 5 U.S.C. § 7701(c)(2)(C). We convened en banc to reconsider whether FBI employees are entitled to bring such whistleblowing claims to the

Board. We now conclude that 5 U.S.C. § 2303 requires all FBI employees to bring claims of whistleblower reprisal to the Attorney General. Accordingly, we vacate the portion of the panel opinion finding that FBI employees may raise whistleblower reprisal as an affirmative defense before the Board, but reinstate the panel opinion as to all other issues. This case is remanded to the Board for consideration of the appropriate penalty.

I

On April 26, 2012, the FBI dismissed Mr. Parkinson from his position as a Special Agent after finding him guilty of lack of candor, obstruction, fraud/theft, and on-duty unprofessional conduct. Mr. Parkinson, a preference-eligible veteran, appealed his removal to the Board and raised whistleblower reprisal as an affirmative defense. The Administrative Judge dismissed Mr. Parkinson's whistleblower reprisal affirmative defense based on the Board's decision in *Van Lancker v. Department of Justice*, 119 M.S.P.R. 514 (2013), which held that FBI agents are not entitled to such affirmative defenses under 5 U.S.C. § 7701(c)(2)(B) because the FBI is excluded from the definition of agency in 5 U.S.C. § 2302. The Administrative Judge, therefore, sustained Mr. Parkinson's removal based on the lack of candor and obstruction charges. The Board affirmed.

On February 29, 2016, a panel of this court sustained the obstruction charge but found the lack of candor charge unsupported by substantial evidence. The panel also determined that the Board improperly precluded Mr. Parkinson from raising whistleblower reprisal as an affirmative defense under 5 U.S.C. § 7701(c)(2)(C).

We granted the Department of Justice's petition for en banc review to determine whether preference-eligible FBI employees can raise whistleblower reprisal as an affirmative defense under 5 U.S.C. § 7701(c)(2)(C).

## II

A brief history of the statutory context is in order.  In 1978, Congress enacted the Civil Service Reform Act (CSRA), which "comprehensively overhauled the civil service system."  *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 773 (1985).  The CSRA replaced the Civil Service Commission with three new agencies: the Office of Personnel Management (OPM); the Federal Labor Relations Authority (FLRA); and the Merit Systems Protection Board (Board).  5 U.S.C. §§ 1101, 7104, 1201.  The Board was given "the responsibility, inter alia, to adjudicate appeals of adverse personnel actions taken by a federal agency against its employees."  *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1327 (Fed. Cir. 2006) (en banc).  The Board's jurisdiction, however, did not extend to all adverse actions, nor to all employees of the Federal government.  Only certain covered actions are reviewable and only certain covered employees may seek review.  *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5–6 (2012).

Covered employees generally include those in the "competitive service," those in the "excepted service" who meet tenure and length of service requirements, and, most relevant to this case, preference-eligible employees in the excepted service.  *See* 5 U.S.C. § 7511(a)(1) (limiting the definition of "employee" to certain personnel).[1] Even given those broad categories, many federal employ-

---

[1]    The CSRA initially included only those members of the excepted service who were preference-eligible. Subsequently, Congress enacted the Civil Service Due Process Amendments of 1990, Pub. L. No. 101-376, 104 Stat. 461 (Aug. 17, 1990) (codified in relevant part at 5 U.S.C. § 7511), which extended appeal rights to non-preference-eligible members of the excepted service who had met service and tenure requirements. *See Bennett v. Merit Sys. Prot. Bd.*, 635 F.3d 1215, 1220 (Fed. Cir. 2011).

ees do not have the right to appeal to the Board. Employees of several agencies were entirely excluded from the group of employees entitled to appeal to the Board. *See, e.g.*, 5 U.S.C. § 7511(b)(1)–(10). Other agencies and their employees, including those of the FBI, were also excluded from coverage with the exception of certain preference-eligible employees. *Id.* § 7511(b)(8). That coverage continued protections for veterans and other preference-eligible employees who had previous appeal rights to the Civil Service Commission. *See* Veterans' Preference Act of 1944, Pub. L. No. 78-359, § 14, 58 Stat. 387, 390–91 (1944).

The CSRA also, for the first time, created whistleblower protections for certain federal employees. The CSRA established the Office of Special Counsel (OSC) to investigate allegations of whistleblower reprisal and seek remedies from the Board on behalf of employees subject to such reprisal. *See* 5 U.S.C. § 1214. Initially, however, this was the only option available to an employee as the CSRA did not create an individual right to bring a whistleblower claim directly to the Board. Subsequently, in the Whistleblower Protection Act (WPA), Congress created a new Individual Right of Action (IRA) which permitted certain individuals to bring individual whistleblower claims directly to the Board. *See* 5 U.S.C. § 1221(a). The CSRA also defined prohibited personnel practices that certain federal employees may raise as an affirmative defense when challenging an adverse action before the Board, including whistleblower retaliation. *See* 5 U.S.C. § 7701(c)(2)(B) (requiring the Board to reverse an adverse employment action when the employee "shows that the decision was based on any prohibited personnel practice described in section 2302(b) of this title").

Relevant to this appeal, § 2302(b)(8) prohibits retaliation against certain federal employees who expose waste, fraud, and abuse. Specifically, § 2302(b)(8) prohibits taking or threatening to take a personnel action against

"an employee in, or applicant for, a covered position in an agency" because that individual disclosed information "which the employee or applicant reasonably believes evidences (i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . ." Employees who are covered under § 2302(b)(8) may raise a whistleblower reprisal allegation in one of three ways: (i) to the OSC under 5 U.S.C. § 1214, (ii) at the Board by filing an IRA under 5 U.S.C. § 1221, or (iii) as an affirmative defense to an adverse employment action under 5 U.S.C. § 7701(c)(2)(B). As with the general coverage provisions for Board appeal rights, the whistleblower provisions of § 2302 do not apply to all agencies and their employees. *See* 5 U.S.C. § 2302(a)(2)(C). The plain language of the statute excludes the FBI. *See* 5 U.S.C. § 2302(a)(2)(C) (for purposes of § 2302, "agency" "does not include . . . the Federal Bureau of Investigation"). Therefore, FBI employees are not covered under § 2302(b)(8) and may not bring a claim of whistleblower reprisal under § 1214, § 1221, or as an affirmative defense under 5 U.S.C. § 7701(c)(2)(B).

Congress did not leave FBI employees without whistleblower protections. In fact, it enacted a specific protection regime just for FBI employees who act as whistleblowers. Although it excluded them from § 1214, § 1221, and § 2302(b)(8), it enacted 5 U.S.C. § 2303, a separate but parallel whistleblower regime designed to protect all FBI employees from retaliation. Borrowing the definition of "personnel action" from § 2302(a)(2)(A)(i)–(x), § 2303 largely tracks the relevant protections provided in the general whistleblower statute, § 2302(b)(8), insofar as the substance of the disclosures given protection against "personnel actions" is concerned. It prohibits taking or failing to take a "personnel action" with respect to:

any employee of the Bureau as a reprisal for a disclosure of information by the employee to the Attorney General (or an employee designated by the Attorney General for such purpose) which the employee or applicant reasonably believes evidences (1) a violation of any law, rule, or regulation, or (2) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

5 U.S.C. § 2303. One difference from § 2302(b)(8) is that § 2303 limits the protected disclosures to those made within the Department of Justice.[2] The more significant difference, for present purposes, is in the manner in which these protections are enforced.

Under § 2303, FBI employees, unlike employees covered under § 2302(b)(8), do not have the right to bring claims of whistleblower reprisal directly to the Board by filing an IRA, or raise it as an affirmative defense to an adverse employment action under 5 U.S.C. § 7701(c)(2)(B). Section 2303(c) instead requires the President to "provide for the enforcement of this section *in a manner consistent* with applicable provisions of sections

---

[2]    Congress recently amended § 2303 to expand the list of people and offices to whom FBI employees may make protected disclosures. Because the appeal was filed before the amendment, we rely on the prior version of the statute. *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1349 (Fed. Cir. 2015) ("'[A] statute shall not be given retroactive effect unless such construction is required by explicit language or by necessary implication.'"); *Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2765 (2006) ("[I]f a new rule has no retroactive effect, the presumption against retroactivity will not prevent its application to a case that was already pending when the new rule was enacted.").

1214 [OSC investigation] and 1221 [IRA at the Board]"
(emphasis added), and § 2303(b) gives the Attorney Gen-
eral the authority to prescribe regulations to ensure that
personnel actions are not taken against FBI employees as
reprisal for making a protected disclosure. In 1997, the
President delegated his enforcement responsibilities
under § 2303(c) to the Attorney General. Memorandum,
Delegation of Responsibilities Concerning FBI Employees
Under the Civil Service Reform Act of 1978, 62 Fed. Reg.
23,123 (Apr. 14, 1997).

Under the regulations promulgated by the Attorney
General, FBI employees may bring claims of whistleblow-
er reprisal to the Office of Professional Responsibility
(OPR) and the Office of Inspector General (OIG), who are
charged with investigating claims of whistleblower re-
prisal. 28 C.F.R. § 27.3. If OPR or OIG determines "that
there are reasonable grounds to believe that a reprisal
has been or will be taken, [OPR or OIG] shall report this
conclusion, together with any findings and recommenda-
tions for corrective action, to the Director, Office of Attor-
ney Recruitment and Management (the Director)." *Id.*
§ 27.4. "[I]f the Director determines that a protected
disclosure was a contributing factor in a personnel action
taken or to be taken, the Director shall order corrective
action as the Director deems appropriate." *Id.* The
Attorney General explained that for FBI employees'
whistleblower reprisal claims, "the roles and functions of
[OPR, OIG, and the Director] are thus analogous to those
of the OSC and [the Board], respectively, in whistleblower
cases involving federal employees generally." Whistle-
blower Protection for Federal Bureau of Investigation
Employees, 64 Fed. Reg. 58,782, 58,783 (Nov. 1, 1999).

## III

We may not set aside a Board's decision unless it is
"(1) arbitrary, capricious, an abuse of discretion, or other-
wise not in accordance with law; (2) obtained without

procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703. Statutory interpretations, like other questions of law, are reviewed de novo. *Killeen v. Office of Pers. Mgmt.*, 558 F.3d 1318, 1323 (Fed. Cir. 2009).

It is undisputed that, as a preference-eligible FBI employee, Mr. Parkinson may appeal adverse employment actions to the Board. *See* 5 U.S.C. §§ 7513(d), 7511(a)(1)(B)(i). It is also undisputed that he may not bring whistleblower claims to the Board through an IRA under § 1221 or as an affirmative defense under 5 U.S.C. § 7701(c)(2)(B) because those statutory provisions depend on the whistleblower reprisal provision in § 2302(b)(8), which, as shown above, does not apply to any FBI employees.

Nonetheless, Mr. Parkinson argues that the Board may still hear his claim of whistleblower reprisal as an affirmative defense under § 7701(c)(2)(C). That section requires reversal of any agency action that is "not in accordance with law." *Id.* According to Mr. Parkinson, if the FBI violates the provisions of § 2303—the statute establishing a separate whistleblower scheme specifically for the FBI—it acts not in accordance with law and therefore violates § 2302(c)(2)(C). We disagree that a violation of § 2303 can form the basis of an affirmative defense under § 7701(c)(2)(C). We also conclude that § 2303 establishes a separate and independent whistleblower scheme for FBI employees, which does not provide for review at the Board or in this court.

## A

The relevant statutory provisions make clear that the Board does not have jurisdiction to hear preference-eligible FBI employees' claims of whistleblower reprisal under § 7701(c)(2)(C).

As noted above, Congress specifically exempted the FBI from the whistleblower protection set forth in 5 U.S.C. § 2302(b)(8) and instead provided a separate review process for claims of whistleblower reprisal by FBI employees. Section 2303, including its delegation to the President of authority to create a remedy scheme specific to this section, plainly applies to "*any* employee of the Bureau." 5 U.S.C. § 2303(a) (emphasis added). It does not distinguish between preference-eligible employees and non-preference-eligible employees. The broad and encompassing language of § 2303, and the corresponding broad exclusion of the FBI from § 2302, indicates Congress's intent to establish a separate regime for whistleblower protection within the FBI.[3] Allowing preference-eligible FBI employees to raise whistleblower reprisal claims at the Board when § 2303—the only statute protecting FBI employees from whistleblower reprisal—does not provide such a right, would contradict the unambiguous statutory language of § 2303 and inappropriately expand the protections provided to FBI employees by Congress.

Moreover, allowing the Board to review FBI whistleblower reprisal claims under the broad language of § 7701(c)(2)(C) would render the specific provisions of § 7701(c)(2)(B) superfluous. Section 7701(c)(2)(B) specifically requires the Board to overturn adverse actions for

---

[3] The FBI is not the only agency to have a separate statutory scheme for the protection of whistleblower rights. *See* Intelligence Community Whistleblower Protection Act of 1998, Pub. L. No. 105-272, 112 Stat. 2396 (1998) (establishing whistleblower protections for employees, or contractor employees, of certain agencies excluded from 5 U.S.C. § 2302(b)(8), including the Defense Intelligence Agency, National Geospatial-Intelligence Agency, National Reconnaissance Office, and the National Security Agency).

violations of the general whistleblower statute, § 2302(b)(8). Thus, if we interpreted § 7701(c)(2)(C) so broadly as to allow an FBI employee or applicant for employment to raise whistleblower reprisal as a "violation of law" (specifically, a violation of § 2303), then a violation of § 2302(b)(8) would also qualify as a "violation of law" under § 7701(c)(2)(C), and § 7701(c)(2)(B) would no longer serve any independent purpose. Such a result violates the general/specific canon of statutory construction. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) ("[Where] a general authorization and a more limited, specific authorization exist side-by-side[, t]he canon avoids . . . the superfluity of a specific provision that is swallowed by the general one, violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute." (internal quotation marks and citation omitted)); *Wash. Mkt. Co. v. Hoffman*, 101 U.S. 112, 115–16 (1879) ("As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'").

In light of Congress's specific exclusion of all FBI employees from the whistleblower protections remediable at the Board, and its specific establishment of a separate whistleblower protection scheme for FBI employees, it is improper to read an intent by Congress to allow whistleblower affirmative defenses by preference-eligible FBI employees under the general language of § 7701(c)(2)(C). Congress was clearly aware that it had allowed preference-eligible employees to appeal to the Board, despite the general exclusion of the rest of FBI employees from such protections. It was also aware that it excluded all FBI employees, including those who were preference eligible, from the whistleblower protections of § 2302(b)(8). And it was aware that § 2303 provided no right for Board review of whistleblower claims by any FBI employees, prefer-

ence-eligible or not.  If it had intended preference-eligible FBI employees to use § 2303 as an affirmative defense in Board cases, it could have explicitly said so, either in § 2303 itself, or in § 7701(c)(2)(B) alongside the provision that specifically recognized whistleblower reprisal (along with other prohibited personnel practices), as an affirmative defense.  It did not.  To conclude that Congress nevertheless intended *sub silentio* for preference-eligible FBI employees to bring whistleblower claims to the Board, despite the plain statutory language and structure, goes too far.

The legislative history also supports the conclusion that the Board lacks jurisdiction over preference-eligible FBI employees' claims of whistleblower reprisal under § 7701(c)(2)(C).  Congress noted that "the FBI has exclusive investigative responsibility for foreign counterintelligence activities within the United States" and "is charged with the investigation of 78 different types of violations of criminal statutes relating to the integrity of Federal officials."  95 CONG. REC. H9358 (daily ed. Sept. 11, 1978) (statement of Rep. Collins).  Congress was therefore concerned that the "unique problems facing an intelligence agency such as the FBI," including "[t]he rigorous and dangerous duties performed by the Bureaus' employees," did not "lend themselves to [certain] aspects of this legislation," most notably, the general whistleblower provisions of § 2302(b)(8).  95 CONG. REC. H9359 (daily ed. Sept. 11, 1978) (statement of Rep. Derwinski).  Ultimately, Congress expressly exempted FBI employees from § 2302(b)(8) "on the same basis as the various national security agencies—the Central Intelligence Agency, the Defense Intelligence Agency, and the National Security Agency."  95 CONG. REC. H9358 (daily ed. Sept. 11, 1978) (statement of Rep. Collins).  Instead, due to "the demanding, sensitive, and unique responsibilities" which require "as great a degree of insulation with regard to its personnel function as is practical," Congress gave the FBI "spe-

cial authority . . . to let the President set up their own whistle-blower system so that appeals would not be to the outside but to the Attorney General." 95 CONG. REC. H9429–30 (daily ed. Sept. 11, 1978) (statement of Rep. Udall). The Conference Committee explained:

> The conference substitute excludes the FBI from coverage of the prohibited personnel practices, except that matters pertaining to protection against reprisals for disclosure of certain information described in section 2302(b)(8) would be processed under special procedures similar to those provided in the House bill. The President, rather than the Special Counsel and the Merit Board, would have responsibility for enforcing this provision with respect to the FBI under section 2303.

S. Rep. No. 95-1272, at 128 (1978).

Based on the language of § 2302(b), § 2303, and § 7701(c)(2), which the legislative history confirms, we conclude that the Board does not have jurisdiction to review FBI employees' whistleblower reprisal claims.

## B

Since the late 1990s, § 2303's express delegation of remedy-creation authority to the President has been implemented by regulations that keep review of alleged FBI reprisals within the Department of Justice, with no Board review or judicial review. Congress reconsidered and amended § 2303 in 2016, yet chose not to alter the remedies. If the statute is to be changed to provide for Board review, the remedy lies with Congress and not this court.

The sufficiency of the whistleblower protections available to FBI employees has been debated in Congress more than once. Each time, those debates were predicated on the fact that "[a]ll complaints are investigated and adjudicated completely within the Justice Department without

any opportunity for independent review." S. REP. NO. 114-261, at 4 (2016). In May 2016, Senator Grassley introduced the Federal Bureau of Investigation Whistleblower Protection Enhancement Act of 2016. *Id.* at 21–25. That Act, as proposed, would have "provide[d] for new and enhanced procedures for the investigation and adjudication of allegations of FBI whistleblower reprisal," including judicial review by the Federal Circuit to provide "consisten[cy] with whistleblower cases under the Whistleblower Protection Enhancement Act on appeal from the Merit Systems Protection Board." *Id.* at 10, 15.

On December 16, 2016, Congress slightly modified the FBI whistleblower statute by expanding the group of people and offices to which FBI employees may make protected disclosures. The Federal Bureau of Investigation Whistleblower Protection Enhancement Act of 2016, Pub. L. No. 114-302, 130 Stat. 1516 (2016). The law as enacted does not provide for judicial review of FBI employees' claims of whistleblower reprisal.

As with Board review, whether judicial review should be provided for FBI agents is a matter for Congress and not this court.

IV

We find that the Board did not err in concluding that it lacked jurisdiction to hear FBI employees' claims of whistleblower reprisal under § 7701(c)(2)(C). Therefore, we vacate the portion of the panel opinion finding that FBI employees may raise whistleblower reprisal as an affirmative defense before the Board, but reinstate the panel opinion as to all other issues. Accordingly, we remand to the Board for consideration of the appropriate penalty.

**AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART AND REMANDED**

No costs.

# United States Court of Appeals
# for the Federal Circuit

_____

**JOHN C. PARKINSON,**
*Petitioner*

**v.**

**DEPARTMENT OF JUSTICE,**
*Respondent*

_____

2015-3066

_____

Petition for review of the Merit Systems Protection Board in No. SF-0752-13-0032-I-2.

_____

PLAGER, *Circuit Judge*, with whom LINN, *Circuit Judge*, joins, dissenting.

The majority opinion, recognizing that there is no statute directly on point, engages us in an exhaustive parsing of statutes and legislative history in an effort to infer the "right" answer. But this case is not about the history and construction of tangential statutory enactments.

Over the years the judges of this court have had to deal with the myriad of statutes applicable to federal government employees and their rights under the law. Anyone who does this knows that the statutory structure governing federal personnel that has emerged after years of Congressional additions and amendments is a structure

riddled with inconsistences and puzzling provisions.[1] Sometimes, parsing the variety of statutes that could be invoked as applicable to a particular personnel problem is akin to predicting divine will by studying animal entrails, as was done by the Etruscans and Romans.  In that connection, it has been remarked that, "while 'answers' of some sort will be found if one insists on finding them, many will view the process as unedifying."[2]  My colleague, Judge Linn, in his dissent which I join, nicely shows how such parsing can support the exact opposite conclusion than that reached by the majority.

An alternative approach in this case is to address what Mr. Parkinson's case is fundamentally about, and what the fair and just result should be.  It is true that, as an initial proposition, an agent of the Federal Bureau of Investigation ("FBI") who thinks he or she is being treated unfairly because they blew the whistle on some illegal conduct by other FBI agents, including administrative superiors in the agency, is entitled to have their case decided by—the FBI.[3]

Through the mechanism created under the authority of 5 U.S.C. § 2303, an initial  claim by an FBI agent that an earlier whistleblower report has now led to retaliatory action will be heard by officers in the FBI agency, the same agency against whom the employee is complaining.

---

[1]    The Supreme Court, in a case regarding the statutes governing 'mixed case' appeals before the MSPB, once observed that it is "a complicated, at times confusing, process." *Kloeckner v. Solis*, 568 U.S. 41, 49 (2012).

[2]    *See* Saikrishna Bangalore Prakash, Imperial from the Beginning: The Constitution of the Original Executive 6 (Yale Univ. Press 2015).

[3]    The admittedly ungrammatical "they/their" usage is to avoid repetition of the he/she phrasing.

And the final merits of the agent's complaint will be determined by those same officers, without any further review in a court or elsewhere. In short, the FBI agency is both defendant and judge of the employee's whistle-blower claim of unfair treatment. Some observers might argue that, even if well intentioned in order to limit public disclosure of FBI methods, such a system is an offense to basic principles of due process and governmental authority toward people whose only sin may be that they have chosen to work for the Government.

But that is not the problem we are here called upon to address. Congress created an alternative route for certain preference-eligible employees, of which Mr. Parkinson is one. In the case of certain veterans who are employed by the FBI, designated preference-eligible employees, Congress gave such employees an opportunity to have their complaints heard by a neutral third party, specifically the Merit System Protection Board ("MSPB").[4]

The MSPB, created as part of the 1978 overhaul of the federal employment system, was designed to focus the system on merit principles. It is "responsible for safeguarding the effective operation of the merit principles in practice."[5] The MSPB is the arbiter of employee complaints against an agency employer who has taken what

---

[4] Even before the creation of the MSPB, Congress carved out a statutory right solely for veterans to appeal an adverse personnel action to the Civil Service Commission. *See* 5 U.S.C. § 7701 (1976).

[5] S. Rep. No. 95-969, at 6, U.S. Code Cong. & Admin. News 1978, p. 2728.

the statutes call an "adverse action"; dismissal from the agency is such an action.[6]

Among these merit principles, set out in 5 U.S.C. § 2301, is a general statement about federal employment in subsection (b)(2):

> All employees . . . should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights.

More to the point here, subsection (b)(9) specifically provides:

> Employees should be protected against reprisal for the lawful disclosure of information which the employees reasonably believe evidences—(A) a violation of any law, rule, or regulation, or (B) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

The special protections under subsection (b)(9) have been provided for whistleblowers, employees who report bad conduct on the part of other employees, and are sometimes singled out for retaliatory treatment by agency officialdom. As § 2301 evidences, the MSPB has an important role to play when an employee alleges a retaliatory dismissal following a whistleblowing action, as was the case of Mr. Parkinson.

---

[6] *See* 5 U.S.C. §§ 7512(1), 7513(d); *see also* 5 U.S.C. § 7511(a)(1)(B) and (b)(8) (concerning FBI preference eligibles).

So Mr. Parkinson took his case to the MSPB. He had been removed from his job. He tried to tell the MSPB that his firing was not because of anything he did wrong, but was in retaliation for his being a whistleblower. Specifically, he had reported to his chain of command, including FBI Assistant Special Agent in Charge, Gregory Cox, that two pilots—who were part of the special operations group under Mr. Parkinson's leadership—had engaged in misconduct. He alleged that the two pilots, inter alia, misused FBI aircraft to solicit prostitutes, committed time and attendance fraud, used FBI computers to view pornography, and destroyed equipment. Such alleged activities would seem fairly contrary to the merit system's principles, or any other measure of proper federal employee behavior.

Prior to being removed, but after making his protected whistleblower disclosures, Mr. Parkinson was demoted from his special operations group leadership role, issued a low performance rating, and reassigned to a different field office. Among those involved in taking these actions against Mr. Parkinson was Assistant Special Agent in Charge Mr. Cox—the same FBI employee who was the recipient of Mr. Parkinson's earlier whistleblower disclosures. Later, Mr. Cox and the FBI's Sacramento Office began the process that resulted in Mr. Parkinson's ultimate removal—an action that all three judges in the initial panel decision of this court determined could not be sustained on the grounds presented.[7] That panel decision resulted in this en banc review.

---

[7] *See Parkinson v. Dep't of Justice*, 815 F.3d 757, 776 (Fed. Cir. 2016), *vacated by* 691 F. App'x 909 (Fed. Cir. 2016) (per curiam order granting petition for rehearing en banc).

The MSPB heard Mr. Parkinson's appeal from his dismissal, but ruled he could not present his affirmative defense that the dismissal was in retaliation for his whistleblowing activity. Not surprisingly, the Government's essentially uncontested allegations led the MSPB to affirm his dismissal.

The explanation this en banc court, and to some extent the MSPB, gives is that a claim of whistleblowing by FBI agents under the relevant statutes goes exclusively to the FBI for resolution. But this case does not involve a *claim* of whistleblowing in the first instance. It involves whether a preference-eligible FBI agent, pursuant to a special statutory right to take an appeal from an agency dismissal to the MSPB, can defend against the Government's argument for dismissal by providing evidence of a retaliatory government motive. The Government alleges that, because of the employee's conduct in office, the dismissal is proper. The counter is to show a neutral decider that what he really did was to blow the whistle on the FBI's activities, and that is why they are punishing him—a prohibited retaliatory action.[8]

This is what is known in the law as an affirmative defense.[9] And in what to me is an inexplicable decision, this

---

[8]    It is not surprising to be told that the FBI takes its time and, in many cases, concludes that the allegations of misconduct by FBI authorities—casting a disparaging light on the agency—are unjustified. *See, e.g.*, En Banc Brief of Amici Curiae National Whistleblower Center et al. in Support of Petitioner at 1–8, 16–17; GAO Report 15-112, "Whistleblower Protection, Additional Actions Needed to Improve DOJ's Handling of FBI Retaliation Complaints" (Jan. 2015).

[9]    *See, e.g.*, *Affirmative Defense*, under *Defense*, Black's Law Dictionary (10th ed. 2014) ("A defendant's

court holds that his right to appeal his dismissal to the MSPB does not include the right to defend himself on the one ground that, under normal circumstances, if true, would vitiate the agency's adverse action against him. This is particularly odd because the MSPB in considering permissible penalties for wrongdoing may consider whistleblowing as a mitigating factor. *See Archuleta v. Hopper*, 786 F.3d 1340, 1352–53 (Fed. Cir. 2015) (en banc); *Douglas v. Veterans Admin.*, 5 M.S.P.B. 313, 331–33 (1981).

No amount of parsing of tangential statutes and regulatory provisions can justify a basic denial of the right to make one's best case to the designated arbiter of one's fate. *See* U.S. Const. amend. V ("No person . . . shall be deprived of life, liberty, or property, without due process of law . . . ."). *See also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985): "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. . . . The tenured public employee is entitled to . . . an opportunity to present his side of the story." If this case is not a denial of due process by the Government, I am hard pressed to imagine one.

Congress gave Mr. Parkinson an exemption from the 'usual' FBI whistle-blower/adverse action rules and gave him a hearing before the MSPB. That hearing must be conducted in a fair and proper way under our Constitution. A right to present what may prove to be a valid affirmative defense is clearly included. Equally im-

---

assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true. . . . Also termed plea in avoidance; plea in justification. *Cf.* negative defense; confession and avoidance.").

portantly, if the MSPB fails in its duty to provide a fair and proper hearing, the law gives him a right to appeal to this court for correction.

Both we and the MSPB have failed in our duty. I respectfully dissent.

# United States Court of Appeals
# for the Federal Circuit

---

**JOHN C. PARKINSON,**
*Petitioner*

**v.**

**DEPARTMENT OF JUSTICE,**
*Respondent*

---

2015-3066

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-13-0032-I-2.

---

LINN, *Circuit Judge*, with whom PLAGER, *Circuit Judge,* joins, dissenting.

The majority concludes that Congress implicitly limited preference eligible Federal Bureau of Investigation ("FBI") employees' statutory right to challenge adverse employment actions under 5 U.S.C. §§ 7513 and 7701 by creating an administrative enforcement scheme available to all FBI employees. I respectfully dissent from this implicit limitation of an explicit right.

I

The perspective underlying much of the majority's reasoning is that Parkinson is an FBI employee first, and a preference eligible veteran second. Thus, the majority concludes that "the [Merit Systems Protection Board

('Board')] does not have jurisdiction to hear preference eligible FBI employees' claims of whistleblower reprisal under § 7701(c)(2)(C)." Maj. Op. at 9.

However, Parkinson does not ask the Board to review his claims of whistleblower retaliation—Parkinson asks the Board to review the propriety of the FBI's *adverse employment action* under 5 U.S.C. § 7513(d) ("An employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title.").

The majority acknowledges that Congress intended to give Parkinson the right, as a preference eligible veteran, to have the Board and this court review the FBI's adverse employment action. Maj. Op. at 4. Congress empowered the Board and this court to ask and answer the following question: was the FBI's adverse employment action taken "for such cause as will promote the efficiency of the service"? 5 U.S.C. § 7513(a). Congress unambiguously required the Board to vacate the Agency action, even if supported by substantial or preponderant evidence, where the Board concludes that the Agency action was procedurally flawed, where the basis for the Agency action is prohibited, or where "the decision was not in accordance with law." 5 U.S.C. § 7701(c)(2)(A–C). It is undisputed that a decision to remove an FBI employee motivated by whistleblower retaliation is not in accordance with law under 5 U.S.C. § 2303.

The answer to the Board's congressionally mandated inquiry of whether Parkinson's removal "will promote the efficiency of the service" rests on a determination of whether the removal was motivated by whistleblower retaliation. If Parkinson's allegation of whistleblower reprisal is proven, then Congress requires the Board to vacate the adverse employment action. Thus, the whistleblower retaliation determination is part and parcel of the determination at the heart of the Board's jurisdiction.

The Board's review authority over adverse employment action taken against a preference eligible FBI employee is explicit, as is the Congressional intent that an action taken against such an employee may not be sustained if based on a violation of law. Because an adverse employment action against an FBI employee based on whistleblower retaliation is a violation of law, 5 U.S.C. § 2303, the Board straight-forwardly has jurisdiction to consider Parkinson's contention that his removal was premised on whistleblower retaliation.

The majority, however, concludes to the contrary. The majority instead *infers* a congressional intent to prohibit preference eligible veterans at the FBI from challenging adverse employment actions based on whistleblower retaliation. The majority broadly relies on: (1) the relationship of § 2302 and § 2303 and (2) an implication from § 7701. These are addressed below.

## II

To the extent that the statutory scheme is reasonably amenable to the majority's restriction, such ambiguity must be resolved in the veteran's favor. *See Terry v. Principi*, 340 F.3d 1378, 1384 (Fed. Cir. 2003) ("[I]t is a well-established rule of statutory construction that when a statute is ambiguous, 'interpretive doubt is to be resolved in the veteran's favor.'" (citing *Brown v. Gardner*, 513 U.S. 115, 118 (1994)). The majority's decision is proper only if the statutes unambiguously require the restriction on Parkinson's right to present a whistleblower reprisal affirmative defense.

With respect to § 2303, I agree that § 2303 "establishes a separate and independent whistleblower scheme for FBI employees, which does not provide for review at the Board or in this Court." Maj. Op. at 9. However, nothing in the majority opinion explains why the internal procedure created under § 2303 provides the *exclusive* mechanism to consider whistleblower retaliation at the FBI.

The reference to "*any* employee of the Bureau" in § 2303, Maj. Op. at 10, merely addresses who *the offender* is—it protects FBI employees from whistleblower reprisals made by "any employee." It does not indicate that "any" (or all) allegations of whistleblower retaliation at the FBI may *only* be considered internally under the Attorney General's scheme. As I read the statute, it merely provides an administrative scheme for the enforcement of a right *available* to all FBI employees. Such an affirmative grant does not and should not implicitly limit the judicial review explicitly available to a select class of employees that implicates the same right.

The fact that § 2303 does not distinguish between preference eligible and not preference eligible employees, Maj. Op. at 10, cuts against the majority's interpretation of the overall statutory scheme that singles out preference eligible FBI employees and hamstrings their right of Board review of adverse employment actions taken against them.

The majority also wrongly relies on the combination of the "broad and encompassing language of § 2303, and the corresponding broad exclusion of the FBI from § 2302" to infer a congressional intent of exclusively internal review. Maj. Op. at 10. There are several problems with this reasoning. First, the exclusion of the FBI from § 2302 says nothing about whether the enforcement mechanism of § 2303 is the exclusive mechanism available to FBI employees. Second, § 2303 limits qualifying disclosures to those made "by the employee to the Attorney General (or an employee designated by the Attorney General for such purpose)." The exclusion of the FBI from § 2302 thus has the effect of limiting the types of qualifying disclosures available to FBI agents. It says nothing about the adjudicatory body available to remedy whistleblower reprisal.

Section 2303 prohibits certain actions by the FBI and gives the Attorney General and the President the power

to enforce those prohibitions, but it nowhere indicates that the resulting administrative enforcement scheme is intended to be exclusive, or that employees with judicial appeal rights under §§ 7701, 7511, and 7513 cannot contest adverse employment actions taken against them as based on those same prohibited actions.

## III

The majority also concludes that § 7701(c)(2) itself limits Parkinson's rights to assert § 2303 as part of his challenge to the FBI's employment action. Maj. Op. at 10–13. I disagree.

First, allowing an affirmative defense of whistleblower retaliation under § 7701(c)(2)(C) referencing § 2303 does not render § 7701(c)(2)(B) superfluous. The majority does not explain how the fact that "a violation of § 2302(b)(8) would also qualify as a 'violation of law' under § 7701(c)(2)(C)," Maj. Op. at 11, applies to the instant situation, where the premise is that § 2302(b)(8) does *not* apply. In other words, the majority's hypothetical is flawed, because the FBI cannot take action that is a "violation of law" based on § 2302(b)(8) because of the FBI's exclusion from the definition of "agency" in § 2302(b)(8). Indeed, the inapplicability of § 2302(b)(8) is the reason we are considering § 7701(c)(2)(C) at all in this case. If it were otherwise, Parkinson's right to assert whistleblower reprisal to challenge his removal would be found under § 7701(c)(2)(B). The "general/specific canon of statutory construction," Maj. Op. at 11, is thus also inapplicable—there is no superfluity because the scope of the two provisions is facially different. *See Parkinson v. Dep't of Justice* ("*Panel Op.*") 815 F.3d 757, 774 (Fed. Cir. 2016), *vacated by* 691 F. App'x 909 (Fed. Cir. 2016) (per curiam order granting petition for rehearing en banc) (distinguishing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012)).

If § 7701(c)(2)(B) explicitly excluded FBI employees from raising an affirmative defense of whistleblower retaliation, then the majority's argument might be more convincing. Here, however, the FBI's exclusion is in § 2302(b)(8). There is no basis to conclude that Congress intended the FBI's exclusion from § 2302(b) as an affirmative restriction on the availability of affirmative defenses at the Board described in § 7701(c)(2), rather than as a restriction on statutes that rely on the criteria of § 2302(b) to establish jurisdiction, such as the right of review in 5 U.S.C. § 1214(a)(3) and the independent right of action in 5 U.S.C. § 1221.

At bottom, there is no unambiguous exclusion of preference eligible FBI employees from the right to assert an affirmative defense of whistleblower reprisal in either §§ 2302, 2303 or § 7701.

## IV

The majority bases its decision on two additional arguments based on congressional consideration and action: (1) Congressional concern for national security arising out of judicial adjudication of FBI whistleblower reprisals, Maj. Op. at 12–13, and (2) later Congressional consideration and rejection of greater whistleblower protection for FBI employees. Maj. Op. at 13–14.

The legislative history only goes to show that Congress determined that the security risk of adjudicating *all* FBI employees' whistleblower complaints at the Board outweighed the benefits, in a similar way that Congress decided that adjudicating *all* FBI employees' removals at the Board outweighed the benefits. Congress, however, granted preference eligible FBI employees the right to Board review of certain employment actions despite these risks. *Panel Op.*, 815 F.3d at 771–74. As explained in Section I above, the right to challenge the employment action on the basis of whistleblower reprisal attaches to the right to contest the employment action. Neither the

Government nor the majority argue that adjudicating whistleblower reprisals leading to adverse employment actions pose greater security and disclosure risks than adjudicating the removals themselves.

Moreover, nothing in the legislative commentary or proposed legislation referenced preference eligible FBI employees. All of the cited post-Civil Service Reform Act legislative activity is consistent with the availability of judicial review of Parkinson's removal, including his challenge that the removal was motivated by whistle-blower retaliation.

V

At base, I disagree with the majority's framing of the issue from the perspective of Parkinson as an FBI employee first, and disregarding the congressional intent manifest in §§ 7701 and 7513 that gives preference eligible FBI employees a right to challenge certain adverse employment actions by alleging that the action taken was not in accordance with law. I therefore respectfully dissent.